IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANNY SANDERS, #141 012, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1:11-CV-755-TMH |
| ) | [WO] |
| ROBERT NIELSEN, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This petition for writ of habeas corpus was filed by an inmate currently of the Bibb County Correctional Facility located in Brent, Alabama, pursuant to 28 U.S.C. 2254. However, the court deems it appropriate to construe the action under 28 U.S.C. 2241 because Petitioner challenges execution of his state sentence by the Alabama Department of Corrections [ADOC"].[1] An order to show cause issued, Respondents filed an answer, and Petitioner filed a response. (*Doc. Nos. 9, 21, 29*.) Having considered all materials filed, the court finds as follows.

**I. CLAIM**

Petitioner claims that the ADOC has incorrectly computed his release date and he is, therefore, being confined beyond the expiration date of the sentence on which he is currently incarcerated. The heart of Petitioner's challenge is his contention that his twenty-two year term of imprisonment imposed following his 2003 conviction for first degree theft of

---

[1] A petition brought under § 2241 "challenges ... the execution of a sentence, rather than the validity of the sentence itself." *Antonelli v. Warden, U.S.P. Atlanta,* 542 F.3d 1348, 1352 (11th Cir. 2008) (citation omitted).

property (*State v. Sanders*, CC-03-02 (Pike County Circuit Court)) has expired. Petitioner's argument relies on a trial court order entered November 2, 2009, wherein the court ordered Petitioner's sentence in his 2003 conviction to run "concurrently with case number CC-1991-921, retroactively to the date beginning the running of the sentence on the CC-91-921." (*Doc. No. 8, Exh. A*.) In their answer, Respondents contend that Petitioner's habeas petition is due to be denied because his claim provides no basis for relief. (*Doc. No. 21*.) Specifically, Respondents maintain that Petitioner's claims were properly adjudicated on the merits by the state courts. *See Williams v. Taylor*, 529 U.S. 362, 404-405 (2000). Upon review of the § 2241 petition, the answer of Respondents, and Petitioner's response, the court concludes that no evidentiary hearing is required and that the petition is due to be denied. *See generally* Rule 8, *Rules Governing Section 2254 Cases in United States District Courts*.

## II. DISCUSSION

*A. Standard of Review*

Because Petitioner's federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act, its provisions apply to this case.[2] *Lindh v. Murphy,* 521 U.S. 320, 326 (1997). Thus, to prevail on a § 2241 claim adjudicated on the merits by the state courts, Petitioner must show that the decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding."

---

[2] A habeas petition filed by a state prisoner in custody pursuant to the judgment of a state court is subject both to § 2241 and § 2254, with its attendant restrictions. *See Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003).

28 U.S.C. §2254(d)(1) & (2);[3] *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411; *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). A responsible, thoughtful

---

[3] 28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2) resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . ." *Id.* at 636.

*B. Sentence Calculation*

On October 8, 2007 Petitioner filed a Rule 32 petition in the Circuit Court for Houston County, Alabama, challenging the ADOC's calculation of his jail credit. The trial court denied and dismissed the petition. On appeal, the Alabama Court of Criminal Appeals entered an order on April 28, 2009 reversing the lower court's dismissal of Petitioner's petition and remanding it to the trial court with instructions that it consider Petitioner's pleading as a habeas corpus petition. The Circuit Court for Houston County subsequently held a hearing on the petition on October 20, 2009. Prior to the hearing, counsel for Petitioner in the habeas proceeding filed a motion for relief. In the motion for relief, Petitioner argued that his twenty-two year sentence in CC-2003-02 should have been run

concurrent with the sentences imposed for his convictions in CC-91-512 and CC-91-921 but that the trial court, in a separate court proceeding with regard to the latter convictions, had inadvertently failed to include CC-2003-02 when entering the order directing that Petitioner's 1991 convictions be run concurrently. Petitioner further argued, in pertinent, part:

> 5. Defendant's case CC-2003-02, in which the Defendant was given a 22 year sentence, if run concurrent with the 1991 cases would result in the Defendant having served approximately 18 years and 5 months of his 22 year sentence.
>
> 6. Defendant requests that this Honorable Court grant his motions and allow him to run CC-2003-02 with CC-91-512 and CC-91-921 as his base case and/or to set this matter for a hearing. . .

(*Doc. No. 21, Exh. 4* at 23-24.)

At the remand hearing held October 20, 2009, the following transpired:

> MS. RASH: It is on remand. He had filed a Rule 32. They remanded it and said it should be treated as a habeas petition. And I had reported to you about the circumstances of the case, your Honor, and you had told me to file something. And I filed a motion kind of setting forth what my client's case was.
>     Basically, he had filed a Kirby motion. And Judge Holloway had issued an order back in, I think, it was 2006. Yes, sir, March 13th of 2006. And he ran some of his cases concurrently and ordered a twenty-year sentence. He ordered, specifically, that he would serve fifteen. Well, it looks to me, Your Honor, as though the intent was for that other case, the 2003 case, to be included, because he was already convicted or had pled guilty of that at the time.
>
> THE COURT: What kind of case is it?
>
> MS. RASH: Let's see. What was the '03 case?
>
> THE DEFENDANT: Theft of property.

MS. RASH: Theft of property. All of his offenses have been nonviolent offenses. And it appears to me that it was just neglected in some way to be included in Judge Holloway's order. And if his '03 case had been ran back with the '91 case, he would have served eighteen years and five months.

THE COURT: What says the State?

MR. SMITH: Judge, it is normally our policy -- and I don't have that file in front of me -- that we don't run CC time on the prior conviction if they plead to something new that occurred some time after what they have already been convicted to. I mean, that is generally what we would not do.

THE COURT: How long has he been in?

MS. RASH: Well, according to Judge Holloway's order, he's been in eighteen years and five months. And his longest sentence was twenty-two years.

THE COURT: All right. If you'll do me an order, we'll run it concurrent.

MS. RASH: Thank you. Also, Judge, could we possibly while he's here take up the possibility of Community Corrections, him serving Community Corrections on the rest of the time, or do you want me to file something on that?

THE COURT: Yeah, we'll do that. Just file that too.

MS. RASH: Okay. Thank you, Judge.

(*Doc. No. 21, Exh. 4* at 28-30.)

On November 2, 2009, the trial court ordered that "Defendant's case # CC-03-02 shall be run concurrently with the case number CC-1991-921, retroactively to the date beginning the running of sentence on the CC-91-921 conviction [and] . . . upon approval by Community Corrections the Defendant may serve the remainder of his sentence through Community

Corrections."[4] (*Doc. No. 21, Exh. 4* at 31.) On December 31, 2009, Petitioner filed a motion for enforcement of the court's November 2, 2009 order. (*Id*. at 33-34.) He requested that the trial court direct the Alabama Department of Corrections to properly compute his time sheet to reflect the appropriate amount of time served in accordance wit the directives contained in the court's November 2, 2009 order. (*Id*.) On April 28, 2010, the trial court entered the following order:

> On November 2, 2009, the Circuit Court of Houston County, Alabama, entered an order running the sentences in CC-2003-02 and CC-1991-921 concurrently and further ordered that the remainder of the defendant's sentence be served through the Houston County Community Corrections. It is therefore ordered that the Department of Corrections take steps to return his defendant to Houston County Community Corrections and certify to said agency what amount of time remains on defendant's concurrent sentences.

(*Id*. at 36.)

Thereafter, in September of 2010 Petitioner filed a habeas petition in the Circuit Court for Escambia County seeking his release and arguing that the Alabama Department of Corrections had failed to compute properly the jail credit he received for time served. The trial court held a hearing on the petition on October 26, 2010. Following the hearing, the state court entered an order November 2, 2010 granting the ADOC's motion for summary judgment. (*Doc. No. 21, Exh. 4* at 37-79; *Doc. No. 37, Exh. 7*.)

Petitioner appealed the state court's November 2, 2010 ruling. On appeal, the Alabama Court of Criminal Appeals affirmed the lower court's decision. In doing so, the

---

[4] On return to remand the appellate court entered an order on February 22, 2010, dismissing the appeal finding that the lower court had granted the relief requested by Petitioner. (*Doc. No. 16, Exh. 3.*)

appellate court determined the following:

> Danny Sanders appeals the circuit court's denial of his petition for writ of habeas corpus in which he alleged, as best this Court can determine, that the Alabama Department of Corrections ("DOC") has failed to properly calculate the amount of jail credit to which he is entitled on case number CC-03-02. See § 15-18-5 , Ala. Code 1975. Specifically, Sanders asserted that the DOC failed to alter his beginning-of-sentence date to November 14, 1992, as ordered by a circuit court; therefore, he has not been given all the jail credit to which he is entitled. According to Sanders, once credited with all his jail credit, he has already served his sentence and should be released. Sanders also asserted that th DOC failed to place him in community corrections as previously ordered by a circuit court.
>
> The State moved to dismiss Sanders's petition arguing that the affidavits submitted by the Assistant Director of Central Records for the DOC, and the DOC's attached exhibits, establish that Sanders has been given all the jail credit to which he is entitled. After the circuit court conducted a hearing, it denied Sander's petition.
>
> On appeal, Sanders reasserts the claims raised in his petition and argues that the circuit court abused its discretion by denying relief. This court disagrees. Initially, this Court notes that Sanders's petition only involves his sentence in case number CC-03-02, which is his longest sentence and, thus, controls his end of sentence date. See § 14-3-38, Ala. Code 1975. Although case number CC-03-02 is controlling, Sanders's petition involves multiple convictions and sentences because the order upon which Sanders based his petition requires review of orders pertaining to other convictions and sentences. Therefore, a brief procedural history is necessary to resolve this appeal.
>
> In case number CC-91-512, Sanders was convicted of first degree theft of property and was sentenced as a habitual offender to life in prison. The date his sentence began was March 10, 1992. In case number CC-91-921, Sanders was convicted of first-degree theft of property and was sentenced as a habitual offender to life in prison. This sentence was ordered to run concurrently with the sentence in case number CC-91-512, and the date these sentences began was November 14, 1992. In case number CC-03-02, Sanders was again convicted of first-degree theft of property, but this time was sentenced to 22 years in prison. Sanders's 22-year sentence was ordered to run consecutively to his 2 life sentences.
>
> On or about March 12, 2005, Sanders filed motions pursuant to § 13A-5-9.1, Ala. Code 1975, (hereinafter "Kirby" [*Kirby v. State*, 899 So.2d 968 (Ala. 2004)]), wherein he sought re-sentencing in case numbers CC-91-512 and CC-91-921. The circuit court granted Sanders's motions and re-sentenced him to 20 years in both cases. Pursuant to the re-sentencing, Sanders's sentences were to begin March 10,

2006, for case number CC-91-512 and March 14, 2006, for case number CC-91-921. Sanders was also awarded jail credit for the time he had already served on those two sentences. On November 2, 2009, after Sanders had been granted Kirby relief in case numbers CC-91-512 and CC-91-921, and after the beginning-of-sentence dates in those cases had been changed, the circuit court, on remand, from this Court, ordered Sanders's sentence in CC-03-02 to run "concurrently with case number CC-[91-921, retroactively to the date beginning the running of the sentence on the CC-91-921." (C. 31). The circuit court further ordered "that upon approval by Community Corrections, [Sanders] may serve the remainder of his sentence through Community Corrections." (C. 31). At that point, Sanders was awarded jail credit in case number CC-03-02 for the 111 days that he spend in jail prior to his conviction and sentencing. He was also awarded jail credit for the time he spent in prison between April 23, 2003, his original beginning-of-sentence date for this conviction, and March 13, 2006, the day before his new beginning-of-sentence date in case numbers CC-9[1]-921 and CC-03-02. In case number CC-03-02, the DOC credited Sanders with 111 days of jail credit and credited him with the time he spend in prison between April 23, 2003, and March 13, 2006. It then ran Sanders's sentence from the beginning-of-the sentence date in case number CC-91-921 that Sanders's received after his Kirby motion was granted, March 14, 2006. According to the DOC's calculations, Sanders's end of sentence is on or about January 1, 2025.

On appeal, Sanders argues that the DOC has failed to properly calculate the jail credit to which he is entitled in case number CC-03-02. Referencing the circuit court's November 2, 2009 orders setting his beginning-of-sentence date in case number CC-03-02 to coincide with the beginning-of-sentence date in case number CC-91-921, Sanders argues that his beginning-of-sentence date in case number CC-03-02 should have been November 14, 1992, his original beginning-of-sentence date in CC-91-921. According to Sanders, once his beginning-of-sentence date in case number CC-03-02 is correctly set to November 14, 1992, he has already served his sentence. Sanders's argument, however, is without merit.

Prior to the circuit court's November 2, 2009 order setting Sanders's beginning-of-sentence date in case number CC-03-02 to coincide with the beginning-of-sentence date in case number CC-91-921, Sanders was granted Kirby relief in case number CC-91-921, and his beginning-of-sentence date for that conviction was changed to March 14, 2006. After his beginning-of-sentence date in case number CC-91-921 had been changed to March 14, 2006, the circuit court issued its order directing that Sanders's beginning-of-sentence date in case number CC-03-02 be set to coincide with the beginning sentence date in CC-91-921. Thus, the circuit court's November 2, 2009 order setting his beginning-of-sentence date in CC-03-0[2] to coincide with Sanders's new, post-Kirby-relief beginning-of-sentence date in CC-91-921, which was March 14, 2006. After deducting the 111 days of jail credit Sanders was awarded and the jail credit he was awarded for the time he spent in prison between April 23, 2003, and March 13, 2006, for his 22-year sentence, and running the

> remainder of his sentence from March 14, 2006, the DOC has properly determined that Sanders's end-of-sentence date in case number CC-03-02 is on or about January 1, 2025. Therefore, the DOC has correctly calculated Sanders's jail credit, he has not served his sentence, and his argument to the contrary is without merit.

(*Doc. No. 16, Exh. 1*.)

In the present proceeding, Petitioner argues, as he did in the state courts, that the trial court's use of the term "retroactive" in its November 2, 2009, order meant retroactive to the original sentencing date in case number CC-91-921 and not from the amended sentencing date entered in that conviction in 2006. Petitioner, therefore, maintains, that when, in 2009, the court ordered his 2003 sentence to run concurrent and "retroactively to the date beginning the running of the sentence on the CC-91-921 conviction," he interpreted said order to mean he had served eighteen (18) years and five (5) months on all sentences he was then serving, including his twenty-two year prison term imposed in 2003. (*Doc. No. 8, 29*.) Petitioner's argument, therefore, is essentially based on the premise that the trial court, through the wording of its November 2, 2009 order, intended for Petitioner's 2003 sentence to commence both earlier than the date Petitioner committed the offense and earlier than the date on which he was convicted and sentenced for said offense. Put another way, the trial court's order would have to be interpreted as authorizing jail credit on Petitioner's 2003 sentence both prior to commission of the crime and prior to his incarceration as a result of said offense.

In order to give credence to Petitioner's argument, the court would have to assume that the trial court had authority to basically "back-date" the commencement of Petitioner's 2003 sentence by having it commence the same date as his pre-existing conviction in CC-91-

921 when that sentence was originally imposed, *i.e.*, November 14, 1992. Petitioner cites to no authority, however, to support his proposition that his 2003 sentence can be made "retroactively" concurrent to a date prior to its imposition, and then be deemed to have begun on the date of imposition of a prior and unrelated state sentence. *See generally Wilson v. Henderson*, 468 F.2d 582, 584 (5th Cir. 1972) ("A sentence cannot commence prior to the date it is pronounced even if it is to be concurrent to a sentence already being served."); *United States v. Fiores*, 616 F.2d 840, 841 (5th Cir. 1980) (same).[5]

The record before the court reflects that Petitioner's 2003 sentence was originally running consecutively to his 1991 sentences which, at the time he committed the 2003 offense, were still life sentences on which he had been paroled in 2001. (*Doc. No. 21, Exh. 4* at 65.) However, as explained by the Court of Criminal Appeals, *see infra*, pursuant to his *Kirby* motions, Petitioner's life sentences in case number CC-91-512 and case number CC-91-921 were amended on March 13, 2006, each to twenty years to run concurrently. (*Id.* at 19, 72.) In the March 2006 order the trial court noted that Petitioner had served (approximately) fifteen years on those convictions. (*Id.* at 19.) Thereafter, believing the ADOC was failing to compute properly the time he had left to serve on his existing sentences, Petitioner filed a state habeas petition on October 8, 2007, challenging the ADOC's calculation of his jail credit. (*Id.* at 21-22.) As explained, the trial court appointed

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

counsel to represent Petitioner in the habeas proceeding. (*Doc. No. 21, Exh. 5* at 2.) Counsel filed a motion for relief on August 5, 2009, stating it appeared that Petitioner's 2003 case was supposed to be included for the court's consideration when it issued its March 13, 2006 order running Petitioner's 1991 cases concurrently, and that if the 2003 case was run concurrent with Petitioner's 1991 cases, such would result in Petitioner having served eighteen years and five months of the twenty-two year sentence.[6] (*Id. Exh. 4* at 23, 24.) Following a hearing on this motion, the trial court issued an order on November 2, 2009 directing that case number CC-03-02 be run concurrently with case number CC-91-921, retroactively to the date beginning the running of the sentence on the CC-91-921 conviction. (*Id*. at 31.) Petitioner's argument in the present petition, as noted, therefore, hinges on his claim that when considering the court's November 2, 2009 order, his twenty-two year sentence imposed in 2003 should be given a starting date of September 14, 1992, and/or be credited as if that sentence began running with his CC-91-921 conviction for which he was sentenced in 1992.

Petitioner is entitled to no relief on this claim. For starters, a criminal defendant's sentence begins to run, at the earliest, upon his being held in custody for the offense in question. Pursuant to Ala. Code § 14-4-9 (1975), "[w]hen it is specifically ordered in the judgment entry that sentences shall run concurrently, such sentences shall run from the date on which such convict is received at the county jail or other place of confinement for service

---

[6]Notwithstanding appointed counsel's contention at the 2009 hearing regarding the omission in the trial court's March 2006 order regarding the 2003 sentence, the amended transcript of record conviction report in case number CC-03-02 reflects that the case was "amended to run concurrent with CC 1991-512 and CC 1991-921." That amended transcript report was prepared on November 18, 2006 by the Clerk for the Houston County Circuit Court. (*Doc. No. 21, Exh. 4* at 18.)

of the sentence."  *See also* Ala. Code § 14-3-38.  However, state law provides that a defendant is entitled to receive jail credit prior to being convicted and sentenced for an offense(s) under Ala. Code § 15-18-5 (1975), which provides that "[u]pon conviction and imprisonment for any felony or misdemeanor, the sentencing court shall order that the convicted person be credited with all of his actual time spent incarcerated pending trial for such offense. The actual time spent incarcerated pending trial shall be certified by the circuit clerk or district clerk on forms to be prescribed by the Board of Corrections."  Accordingly, under Rule 26.9(b)(2), Ala.R.Crim.P., "[i]n pronouncing the sentence, the trial court shall . . . [s]tate that a credit will be allowed on the sentence, *as provided by law*, *for time during which the defendant has been incarcerated on the present charge*."  (Emphasis added). Under state law, however, credit for time served for one crime may not be deducted from the term imposed upon conviction of another crime.  *Youngblood v. State*, 437 So.2d 629 (Ala. Crim. App. 1983).

The record evidence before the court shows that Petitioner's most recent parole release (on his 1991 convictions) occurred on or about July 2, 2001. (*Doc. No. 21, Exh. 4* at 73.) On or about May 24, 2002, he committed a new offense - theft of property in the first degree. (*Id*. at 68.)  Petitioner was then declared delinquent on or about June 4, 2002, had his parole status revoked on or about November 12, 2002, and was arrested on the new charge on or about January 2, 2003. (*Id*. at 68, 73.)  Petitioner was convicted in case number CC-03-02 for the first degree theft offense on April 23, 2003. (*Id*. at 68.)  In September 2005

Petitioner requested an "Order Nunc Pro Tunc" that his twenty-two year sentence in case number CC-03-02 be run concurrently rather than consecutively with the sentences entered on his 1991 convictions. (*Id*. at 11; *Doc. No. 37, Exh. 6* at 35.) The motion was granted and in 2006 the Central Records Division of the ADOC received a transcript of record conviction report reflecting that Petitioner's 2003 sentence was amended to run concurrent with case number CC-91-512 and case number CC-91-921. (*Doc. No. 21, Exh. 4* at 11, 16-18; *see also Doc. No. 37, Exh. 7* at 8.) Petitioner's transcript of record reports from 2006 as prepared on his 1991 and 2003 convictions reflect that he received jail credit on the 1991 sentences of almost fifteen years with a sentence beginning date for CC-91-512 of March 10, 2006, and sentence beginning date for CC-91-921 of March 14, 2006, and jail credit on the 2003 sentence of 111 days. (*Doc. No. 21, Exh. 4* at 11, 16-17.) Following entry of the trial court's November 2, 2009 order, Petitioner's transcript of record conviction report in CC-03-02 was amended to reflect that "[a]mended date sentence begins changed to reflect the date sentence began on CC-91-921 as per court order dated November 2, 2009 (Deft was resentenced from life to 20 yrs). DOC to award credit for all time spent incarcerated on this case from 4-23-03 until 3-13-06 [new sentence beginning date for CC-91-921] as well as any previous jail credit earned and reflected on prior transcript of this case." (*Id*. at 69.) The ADOC then calculated Petitioner's jail credit at 1,161 days in case number CC-03-02 resulting in a minimum release date of January 6, 2025, based on its calculation of jail credit awarded to him based on the trial court's November 2, 2009 order and the term of imprisonment imposed for that

conviction, *i.e.*, twenty-two years. (*Id.* at 72.)

It appears from the foregoing that the effect of the trial court's November 2, 2009 order essentially awarded Petitioner "back time" on his 2003 offense inasmuch as he was awarded credit on that sentence for a period of time prior to the time it was actually ordered to run concurrent with the 1991 sentences. (*See Doc. No. 37, Exh. 7* at 8.) That is, Petitioner received credit on his 2003 sentence for all time he was incarcerated on that offense, *i.e.*, from his arrest on January 2, 2003 through the entry date of the March 13, 2006 order directing Petitioner's existing sentences to run concurrently. Petitioner, however, believes that the trial court's November 2, 2009, order should be understood as entitling him to receive additional jail credit on his 2003 sentence for time he served and which was credited to his 1991 sentences prior to his commission of the 2003 offense. As explained, however, the law does not authorize credit for time served for one crime to be deducted from the term imposed upon conviction of another crime. *Youngblood*, 437 So.2d 629. *See generally Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006) (in the sentencing context, the word "concurrent" "does not mean that two sentences 'have the same starting date because a federal sentence cannot commence prior to the date it is pronounced, even if it is made concurrent with a sentence already being served.'"); *United States v. Majeed*, 2011 WL 1827674 at *3 (E.D. Mo. 2011) ("federal courts have uniformly rejected the proposition that a federal sentence can be made 'retroactively' concurrent to a date prior to its imposition"); *Miramontes v. Driver*, 2007 WL 211093 at *1 (5th Cir. July 23, 2007) ("a district court does

not have authority . . . to order a federal sentence to run absolutely concurrent with a prior sentence.").

In essence, there is simply no provision under the law which would allow Petitioner to "double-dip" for credits awarded on a different sentence assigned for a different offense. While concurrent sentences allow for credit for multiple sentences each day as long as they overlap, sentences ordered to run concurrently do not necessarily begin and end at the same time; rather, they run together during the time they overlap. Thus, when Petitioner was sentenced in 2003, that sentence was running consecutive to his 1991 sentences and only began too overlap in March 2006. The effect of the November 2, 2009 order on the term of Petitioner's prison sentence, however, operated to effectively grant him credit on his 2003 sentence back to the date of conviction as well as jail credit for time spent incarcerated prior to his conviction for that offense. There's simply no statutory authority, however, which would allow Petitioner's 2003 sentence to be deemed to have begun running on the same date as his pre-existing 1991 convictions. He could only begin receiving credit on his 2003 offense, at the earliest, for time served following his incarceration for that offense.

The ADOC's calculation of Petitioner's minimum release date reflects a start date for calculating Petitioner's 2003 conviction as March 13, 2006, with a deduction from that date of more than three years jail credit and/or credit for time served resulting in a minimum release date of January 6, 2025. Petitioner has failed to demonstrate that he is being held on an expired term of imprisonment, and the ADOC's calculation of his release date based on

the prison term imposed for his 2003 sentence as well as the jail credit he is authorized to receive, correctly reflects this.

The appellate court rejected Petitioner's claim that the ADOC improperly calculated and/or computed his jail credit and that he has completed service of the sentence under which he is currently incarcerated. This court must deny habeas relief unless one of the two exceptions found in § 2254(d) applies. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001). Having independently reviewed the record, the arguments presented by the parties, applicable statutes, and controlling case law, the undersigned finds for the reasons detailed herein that Petitioner has not met his burden in this regard. Petitioner is, therefore, not entitled to habeas relief.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Danny Sanders be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before **November 8, 2013** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 21st day of October 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE